Andrew Rozynski, Esq. (NY # 5054465)
Pro Hac Vice to be Submitted
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)

John K. Buche (CA Bar No. 239477) (Local Counsel)
BUCHE & ASSOCIATES, P.C.
2029 Century Park E., Suite 400N
Los Angeles, CA 90067
Tel: (310) 593-4193
Fax: (858) 430-2426
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

---

| | |
|---|---|
| SUSAN MARIE PASHKOVSKY, | |
| Plaintiff, | **Civil Action No: 5:18-cv-2147** |
| v. | |
| ST. JOSEPH HEALTH, ST. MARY MEDICAL CENTER; PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE HEALTH AND SERVICES, | **COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

---

**PRELIMINARY STATEMENT**

1.     Plaintiff SUSAN MARIE PASHKOVSKY is profoundly deaf is profoundly deaf and communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Her deafness impacted her ability to learn and acquire language from an early age, and as a result, she has difficulty communicating in English.[1] Plaintiff is likewise unable to effectively communicate by reading lips.[2] Defendants are a catholic hospital and a not-for-profit healthcare system.

2.     Defendants both hindered and prevented Plaintiff from benefitting from their services, and discriminated against Plaintiff unlawfully, on the basis of Plaintiff's disability of deafness by refusing to provide the ASL interpreters that Plaintiff required to understand and participate in her medical care during a procedure that Plaintiff underwent in Defendants' facilities in 2016 and a subsequent hospitalization. This denial was in spite of

---

[1] Due to physical, environmental, and pedagogical factors, many deaf individuals have difficulty acquiring spoken languages such as English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because many deaf people acquire English as their second language (after ASL or another form of sign language) well past the critical developmental period of language acquisition.

[2] Lip-reading, or the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct communication through a qualified sign language interpreter. Only a small number of spoken sounds in aural language are visible, and many of those words appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language as English and ASL are distinct languages with disparate grammatical structures.

Plaintiff's repeated requests for an interpreter.

3. Based on Plaintiff's allegations herein, it is evident that Defendants have failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from Defendants' health care services.

4. Plaintiff brings this action seeking declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination against Plaintiff on the basis of her disability in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116.

## THE PARTIES

5. Plaintiff SUSAN MARIE PASHKOVSKY brings this action as an individual residing in Victorville, California. Plaintiff is a profoundly deaf individual who has limited English proficiency and who primarily communicates in American Sign Language. Plaintiff is substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of federal and state civil rights laws.

6. Defendant ST. JOSEPH HEALTH, St. MARY MEDICAL CENTER is a

hospital located at 18300 US Hwy 18, Apple Valley, California 92307-2255. Defendants PROVIDENCE ST. JOSEPH HEALTH and PROVIDENCE HEALTH AND SERVICES are a national, Catholic, not-for-profit health system that serve as the parent corporation of St. Joseph Health, St. Mary Medical Center and have their principle places of business at 1801 Lind Ave SW Renton, Washington 98057. Upon information and belief, Defendants are recipients of federal financial assistance, including Medicare and/or Medicaid reimbursements.

## JURISDICTION & VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants are residents of this District, and/or Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced, and/or a substantial part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

9. Ms. Pashkovsky is a profoundly deaf individual who communicates primarily through American Sign Language.

10. Plaintiff has limited proficiency in English, cannot effectively communicate by reading lips, and requires auxiliary aids and services to communicate effectively in a

medical setting.

11. Ms. Pashkovsky suffers from serious back problems, having sustained a work-related injury to her lower back and left hip in 2013.

12. Ms. Pashkovsky underwent a left lumbar decompression surgery on November 17, 2014, to relieve symptoms caused by pressure on her spinal cord and nerve roots.

13. On or about February 11, 2016, Ms. Pashkovsky was scheduled to undergo a second back surgery at Defendants' facility St. Mary Medical Center in Apple Valley, California.

14. Prior to this surgery, Ms. Pashkovsky had arranged to have an ASL interpreter present between 8:00 am and 9:00 am, allowing for a pre-surgery consultation with the surgeon performing her back surgery.

15. Plaintiff made requests for interpreters to Defendants' Language Access Coordinator Maria.

16. However, Defendants failed to provide Plaintiff's prearranged interpretive services on the day of her surgery.

17. No interpreter was present prior to Plaintiff's surgery, and the treating surgeon was unwilling to wait for an interpreter to arrive.

18. Therefore, Ms. Pashkovsky was taken into surgery without any pre-operative consultation.

19. Following her surgery, Ms. Pashkovsky was told that an interpreter had arrived around 12:30 pm.

20. Upon information and belief, Defendants' staff told the interpreter that they were refusing to pay for interpretative services for Plaintiff. Therefore, the interpreter left the hospital within five minutes and Plaintiff was unable to communicate with medical staff after her procedure.

21. As a result of Defendants' failure to provide an interpreter before and after her procedure, Ms. Pashkovsky was unable to communicate with the treating physicians, surgeons, and nurses; she was unable to understand any instructions before entering into surgery; and she had no understanding of the results of the procedure or the medications proscribed to her after the fact.

22. While still groggy from her procedure, Plaintiff asked a member of Defendants' staff for an interpreter. None was provided.

23. Instead, Defendants' forced Plaintiff to attempt to communicate by typing messages on a small screen. However, it was highly difficult for Plaintiff to use the device because she was in pain.

24. Plaintiff wrote requests for an interpreter on the screen. She them wrote the message "where's interpreter?" on the screen and showed in to a number of nurses and doctors. No interpreter was provided.

25. Shortly thereafter, the battery died on the small device that Defendants had

given to Plaintiff to use to type messages. Defendants' failed to give Plaintiff any alternative aids or services and still refused to provide an interpreter.

26.   From February 11 to February 18, 2016 Plaintiff remained hospitalized. During this time, she made numerous requests for an interpreter. No interpreter was ever provided.

27.   Plaintiff tried to understand what Defendants' staff said to her by reading lips. However, Plaintiff cannot communicate by reading lips and she was particularly unable to read the lips of staff because she was in pain and because Plaintiff's doctor had a strong accent.

28.   On one occasion, Plaintiff experienced severe pain as a result of an issue with her catheter. However, she was unable to communicate the issue to her nurses and was forced to sit in excruciating pain until someone realized what was going on.

29.    On one occasion, Plaintiff's son visited her for several hours. During his visit, medical staff forced him to serve as an interpreter for Plaintiff in spite of the fact that Plaintiff's son is a novice signer.

30.   In most instances, effective communication could not have taken place between Plaintiff and Defendants' staff without the aid of a qualified ASL interpreter.

31.   Indeed, as a result of Defendants' failure to provide effective auxiliary aids and services, Plaintiff did not understand the outcome of her procedure; the purposes of the treatments being provided; the common risks and/or benefits of those treatments; the

common risks, side effects, and benefits of medications given; the specific dosage instructions for medications given; the existence of any alternative treatments; the approximate length of care; the potential side effects of stopping treatment; the details of any aftercare or discharge instructions; etc.

32. No interpreter was provided to Plaintiff during discharge.

33. As a result, Plaintiff was unaware that she was supposed to undergo physical therapy. On one occasion shortly after her discharge from the hospital, a therapist arrived at Plaintiff's house to administer physical therapy. She had no idea who the therapist was or why they had come to her house.

34. Similarly, because of the lack of effective communication between Plaintiff and her doctors, Plaintiff was unaware that a portion of a bone in her back had been removed until she discovered that information in her medical records after she returned home.

35. Defendants' discrimination against Plaintiff, and Plaintiff's resulting lack of understanding of her medical care, caused Plaintiff to suffer humiliation, anger, frustration, stress, anxiety, and emotional distress.

36. Defendants and Defendants' staff knew that Plaintiff is deaf and were aware that Plaintiff made repeated requests for interpreters.

37. Defendants also knew or should have known of their obligation as a health care provider under the ADA, the RA, and their equivalents to develop policies to promote

compliance with these statutes and to provide reasonable accommodations, including but not limited to the provision of ASL interpreters to ensure effective communication with deaf persons.

38. Defendants and their staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

39. Nonetheless, Defendants prevented Plaintiff from benefitting from its services by failing to provide the ASL interpreters necessary for her participation and care.

40. In doing so, Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to her federally protected rights.

41. Defendants' wrongful and intentional discrimination against Plaintiff on the basis of her disability is reflected by Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

42. As a result of Defendants' failure to ensure effective communication with Plaintiff, Plaintiff received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

43. Plaintiff is entitled to equal access to services offered by Defendants as are enjoyed by non-disabled persons.

44. Plaintiff still wishes to access Defendants' services and receive care in

Defendants' facilities, but is being prevented from doing so by Defendants' discrimination against her on the basis of her disability.

## CLAIM I: VIOLATIONS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

45. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

46. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to the Defendants' conduct.

47. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

48. At all times relevant to this action, Plaintiff's primary language for communication has been American Sign Language (and not English), and Plaintiff has had limited ability to read, write, speak, or understand English. Plaintiff has therefore been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 45 C.F.R. § 92.4.

49. At all times relevant to this action, Defendants received federal financial assistance, including Medicare and/or Medicaid reimbursements, and have been

principally engaged in the business of providing health care. Therefore, Defendants are a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

50.     Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

51.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201.

52.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to provide meaningful access for that individual with limited English proficiency; and (2) A covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d).

53.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity that provides a qualified interpreter

for an individual with limited English proficiency through video remote interpreting services in the covered entity's health programs and activities shall provide: (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face and the participating individual's face regardless of the individual's body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the video remote interpreting." 45 C.F.R. § 92.201(f).

54. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities." 45 C.F.R.§ 92.202(a).

55. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A [covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a public

entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 45 C.F.R. § 92.202(a); 28 C.F.R. § 35.160(b).

56. As set forth above, Defendants discriminated against Plaintiff, on the basis of disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

57. The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

58. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

59. Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected

Plaintiff to unlawful discrimination in violation of Section 1557 of the Patient Protection and Affordable Care Act.

    b.    Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services, or programs;

    c.    Issue an injunction ordering Defendants:

        i.  to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

        ii.  to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

        iii.  to develop, implement, promulgate, and comply with a policy to ensure that

deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v. to train all their employees, staffs, and other agents on a regular basis about how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

vi. to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

vii. to train all employees, staff, and other agents on a regular basis about the

rights of individuals who are deaf or hard of hearing under the ACA.

d. Award to Plaintiff:

    i. Compensatory damages pursuant to the ACA.

    ii. Reasonable costs and attorneys' fees pursuant to the ACA.

    iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv. Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: October 8, 2018

                                      Respectfully submitted,

                                      By:

                                      Andrew Rozynski, Esq.
                                      (NY# 5054465)
                                      arozynski@eandblaw.com
                                      Pro Hac Vice to be Submitted

                                      EISENBERG & BAUM, LLP
                                      24 Union Square East, Fourth Floor
                                      New York, NY 10003
                                      212-353-8700 (tel.)
                                      212-353-1708 (fax)

By: /s/ John K. Buche
BUCHE & ASSOCIATES, P.C.
2029 Century Park E., Suite 400N
Los Angeles, CA 90067
Tel: (310) 593-4193
Fax: (858) 430-2426

*Attorneys for Plaintiff*